**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BRYTON PROPERTIES LLC, ROCKWELL SERIES, | ) ) ) | |
| Plaintiff, | ) ) | |
| | ) | Case No. 20 C 3686 |
| v. | ) ) | Judge Joan H. Lefkow |
| SARAH CUDNIK, | ) ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Bryton Properties LLC, Rockwell Series ("Bryton") has filed suit against Sarah Cudnik

for an alleged breach of her guaranty of a lease between Bryton and Kids' Work Chicago, Inc.

(Dkt. 1.) In a concurrent proceeding in state court, Bryton seeks possession of the property and

rental payments due under the lease. (Dkt. 10-1 at 187.) Cudnik now moves for a stay of this

federal proceeding under the *Colorado River* abstention doctrine. (Dkt. 10.) For the reasons

stated below, the motion to stay is granted.[1]

## BACKGROUND

In 2011, Kids' Work entered into a lease with Bryton to operate a child-care business in

Chicago. (Dkt. 1 ¶ 9.) Cudnik, President of Kids' Work, executed a personal guaranty of the

lease. (*Id.* ¶ 10.) In March 2020, due to the pandemic known as COVID-19, the Governor of

Illinois issued a "Stay-at-Home Order," preventing schools from meeting in-person. (*Id.*) Kids'

Work had to suspend all operations until May, when it reopened with limited capacity. (*Id.* at 9.)

---

[1] The court has jurisdiction under 28 U.S.C. § 1332(a) because complete diversity exists and the amount in controversy exceeds $75,000, and venue is proper under 28 U.S.C. § 1391 because the events giving rise to Bryton's claims occurred in this district.

Having lost its revenue stream, Kids' Work failed to pay Bryton the full amount due under the lease. (Dkt. 10-1 Exh. 3.)

In June 2020, Bryton filed an action in the Circuit Court of Cook County for forcible entry and detainer (eviction). (*Id.*) In that action, which remains pending, Bryton seeks possession and past-due rent. (*Id.*) Kids' Work has answered and raised affirmative defenses and counterclaims alleging, among other things, that the Stay-at-Home Order constituted a "casualty" under the Lease that abated its obligation to pay rent. (Dkt. 10-1 Exh. 1 at 7–35.) The eviction action appears not to be removable because both Kids' Work and Bryton are citizens of Illinois. (Dkt. 1 ¶ 6; dkt. 1 Exh. 1 at 1.)

The week after filing its complaint in state court, Bryton filed this action in federal court, alleging that Cudnik (a citizen of Wisconsin) breached her guaranty by failing to satisfy Kids' Work's obligations under the lease. (Dkt. 1.) In response, Cudnik has asked this court to stay the federal action under the *Colorado River* abstention doctrine. (Dkt. 10.)

## LEGAL STANDARD

The Seventh Circuit "recognize[s] a general presumption against abstention." *AXA Corp. Sols.* v. *Underwriters Reinsurance Corp.*, 347 F.3d 272, 278 (7th Cir. 2003) (citing *Sverdrup Corp.* v. *Edwardsville Cmty. Unit Sch. Dist. No. 7*, 125 F.3d 546, 549–50 (7th Cir. 1997)). The *Colorado River* abstention doctrine applies, therefore, to "rare cases in which the federal court may decline to exercise its jurisdiction in deference to a concurrent state-court proceeding." *DePuy Synthes Sales, Inc.* v. *OrthoLA, Inc.*, 953 F.3d 469, 475 (7th Cir. 2020). Deference to a state-court proceeding may be appropriate when it would promote "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colo. River Water Conservation Dist.* v. *United States*, 424 U.S. 800,

817, 96 S. Ct. 1236 (1976) (quoting *Kerotest Mfg. Co.* v. *C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183, 72 S. Ct. 219 (1952)) (internal quotation marks omitted). The Seventh Circuit employs a two-step analysis in *Colorado River* cases: First, the court asks whether the concurrent actions in state and federal court are parallel; if so, the court then asks "whether the necessary exceptional circumstances exist to support a stay or dismissal." *DePuy Synthes Sales, Inc.*, 953 F.3d at 477 (citing *LaDuke* v. *Burlington N. R.R.*, 879 F.2d 1556, 1559 (7th Cir. 1989)).

## ANALYSIS

### I.      Parallel Proceedings

"Two suits are considered parallel 'when substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" *Id.* (quoting *Clark* v. *Lacy*, 376 F.3d 682, 686 (7th Cir. 2004)). "Formal symmetry is unnecessary, as long as there is a 'substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" *Id.* at 477–78 (quoting *Clark*, 376 F.3d at 686). "[A] district court should examine whether the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues." *Tyrer* v. *City of S. Beloit, Ill.*, 456 F.3d 744, 752 (7th Cir. 2006) (citing *Clark*, 376 F.3d at 686). The court must focus on "the parties' litigation interests in the two lawsuits." *Clark*, 376 F.3d at 686. The parties and issues in this case are "substantially the same" as those in the state case because, in each, Bryton sues a defendant who is liable only if Kids' Work breached the lease. Although Cudnik is not a party to the eviction action, her interests are "nearly identical" to those of Kids' Work. *Clark*, 376 F.3d at 686; *cf. Caminiti & Iatarola, Ltd.* v. *Behnke Warehousing, Inc.*, 962 F.2d 698, 700–01 (7th Cir. 1992) (holding that a probate estate and a corporation that the estate partly owned were "substantially the same" because "their interests in the dispute . . . are nearly identical").

Further, Cudnik and Kids' Work are "substantially the same" because their liability is coextensive. In Illinois, "the liability of a guarantor is limited by and is no greater than that of the principal debtor and if no recovery could be had against the principal debtor, the guarantor would also be absolved of liability." *Riley Acquisitions, Inc.* v. *Drexler*, 946 N.E.2d 957, 963, 408 Ill. App. 3d 397 (2011) (quoting *Edens Plaza Bank* v. *Demos*, 660 N.E.2d 1, 6, 277 Ill. App. 3d 201 (1995)) (internal quotation marks omitted). "Although the language of a guaranty agreement ultimately determines a specific guarantor's liability, the general rule is that discharge, satisfaction, or extinction of the principal obligation also ends the liability of the guarantor." *Id.* (quoting *Edens Plaza Bank*, 660 N.E.2d at 6) (internal quotation marks omitted).

Here, the guaranty provides that Cudnik is liable only to the extent that Kids' Work is: Cudnik "guarantees … the full and prompt payment of Rent, and any and all other sums and charges *payable under the Lease* by the Tenant … [and] the full and timely performance and observance of all of the covenants, terms, conditions and agreements *under the Lease* provided to be performed and observed by the Tenant …." (Dkt. 1 Exh. 2 (emphasis added).) The same is true of Cudnik's promise to pay "all damages which Landlord may suffer in consequence of any default or breach *under the Lease or this Guarantee*." (*Id.*) By the plain language of the guaranty, if Kids' Work breached the lease, Cudnik is responsible, and if Kids' Work did not breach the lease, Cudnik did not breach her guaranty.

This connection makes the parties and issues in state and federal court substantially the same. As one court in this district has persuasively explained, where "claims on the guaranty are only valid if its claims under the … Loan Agreement are themselves valid," and liability "depends directly on the validity and enforceability" of the principal agreement, actions against a guarantor and a principal obligor are parallel. *Corus Bank, N.A.* v. *de Guardiola*, 593 F. Supp. 2d

991, 994 (N.D. Ill. 2008). Bryton alleges in this case that Cudnik is liable only because Kids'

Work is liable. (Dkt. 1 ¶¶ 12–13.) These are the same allegations that Bryton must prove to

obtain both possession and rent from Kids' Work. (Dkt. 10-1 Exh. 3 ¶¶ 11–12, 18–19.) By the

same token, Cudnik will defend against liability on the same grounds as Kids' Work, primarily

by asserting that the Stay-at-Home Order was a "casualty" under the lease, excusing Kids' Work

from paying "Rent." (Dkt. 10-1 Exh. 1 at 7–35.) Because both Bryton's rights to relief and the

defendants' defenses turn on the same issues in the state and federal actions, there is a substantial

likelihood that the state court's resolution of those issues will resolve Cudnik's liability in this

case. Thus, the federal breach of guaranty action and state breach of lease action are

"substantially the same."

Bryton does not persuade the court that differences between the guaranty and the lease

destroy the parallels between the state and federal cases. First, Bryton argues that Cudnik may be

liable even if Kids' Work is not. The court is not persuaded. Although a creditor may overcome

the presumption that a guarantor's liability depends on the principal's liability, *Riley*

*Acquisitions*, 964 N.E.2d at 964–65, the presumption is strong because "a guarantor 'is a favorite

of the law.'" *Id.* at 965 (quoting *Hensler* v. *Busey Bank*, 596 N.E.2d 1269, 1274 (Ill. App. Ct.

1992)). "A guarantor is to be accorded the benefit of any doubt which may arise from the

language of the contract, and his liability is not to be varied or extended by construction or

implication beyond its precise terms." *Id.* (quoting *Hensler*, 596 N.E.2d at 1274) (internal

quotation marks omitted). Nothing in Cudnik's guaranty overrides this presumption. She has

guaranteed performance of Kids' Work's obligations under the lease, nothing more, nothing less.

Bryton cites the provision in the guaranty that Bryton "shall have the right to enforce this

[guaranty] irrespective of whether or not other proceedings or steps are pending or being taken

seeking to collect from" Kids' Work. (Dkt. 14 at 12.) While this provision establishes Bryton's option to pursue payment from Cudnik alone, it does not establish that Cudnik is liable for anything other than Kids' Work's breaches of the lease. Had Bryton chosen to sue only Cudnik, for instance, this court still would have determined whether Kids' Work breached the lease to decide whether Cudnik breached her guaranty. Moreover, Bryton did not exercise its option to sue only Cudnik, instead suing both Cudnik in federal court and Kids' Work in state court, asking two courts to address the same issues. The cases are still parallel.

Second, Bryton cites the provision that Cudnik's liability "shall in no way be affected or impaired . . . by any compromise, waiver, settlement, change, subordination, modification or disposition of any Guaranteed Payment or Guaranteed Obligation" under the lease. (Dkt. 10 at 225; dkt. 14 at 12. While this language limits the effect on Bryton's rights under the guaranty of any alternative resolution of the eviction case, it also reinforces the principle that liability under the guaranty hinges on whether a payment or obligation is owed under the lease. In other words, although Cudnik might still be liable if Bryton settles its dispute with Kids' Work before the state court can resolve the identical issues in that case, that does not make the issues any less identical. In any case where *Colorado River* applies, the state case could end without resolving the underlying issues, such as by voluntary dismissal. The appropriate course is to lift the stay if that happens, not to refuse a stay in the first place.

Nor does Bryton persuade the court that *Colorado River* should not apply when the state case involves a principal obligor and the federal case involves a guarantor. Bryton cites several cases declining *Colorado River* stays under those circumstances and concludes that *Colorado River* categorically does not apply here. *E.g.*, *Wells Fargo Bank, N.A.* v. *Leafs Hockey Club, Inc.*, No. 13 C 2247, 2013 WL 5433789 (N.D. Ill. Sep. 30, 2013); *JLM Financial Investments 4 LLC*

v. *Aktipis*, No. 11 C 2561, 2012 WL 74856, at *2 (N.D. Ill. Jan. 9, 2012); *Bank of Montreal* v. *McKenzie Methane Corp.*, No. 93 C 3610, 1993 WL 420985, at *7 (N.D. Ill. Oct. 18, 1993); *Mitsui Taiyo Kobe Bank, Ltd.* v. *First Nat. Realty & Dev. Co.*, 788 F. Supp. 1007 (N.D. Ill. 1992). But the Seventh Circuit encourages "painstaking comparison of the federal and state complaints," *Tyrer*, 456 F.3d at 752, and this court will not refuse a stay on such categorical grounds. In the cases Bryton cites, the courts held that a stay would force the plaintiff to attempt to collect payment from the principal obligor first, essentially nullifying the purpose of the guaranty. *E.g.*, *JLM*, 2012 WL 74856, at *2. In this case, however, both the state and federal cases involve the same genuine and substantial contractual dispute about whether any obligation exists. This is therefore not a case where Cudnik asks Bryton to wait until a state court inevitably rules against Kids' Work, thereby forcing Bryton to try to collect from Kids' Work first. Rather, Bryton cannot collect payment from anyone until some court decides the novel issue of whether the Stay-at-Home Order is a "casualty." The question is whether two courts should decide the same issue or whether this court should defer to the state court.

The court thus concludes that the state and federal actions are parallel.

## II.      Extraordinary Circumstances

As noted above, if concurrent actions are parallel, the court then asks "whether the necessary exceptional circumstances exist to support a stay or dismissal." *DePuy Synthes Sales, Inc.*, 953 F.3d at 477 (citing *LaDuke*, 879 F.2d at 1559). Ten factors inform the answer to this second question: (1) whether "the case concerns rights in property, and if so, whether the state has assumed jurisdiction over that property"; (2) the "convenience of the federal forum"; (3) the "value in avoiding 'piecemeal' or broken-up proceedings"; (4) the "order in which jurisdiction was obtained"; (5) the source of governing law; (6) the "adequacy of the state-court action to

7

protect the federal plaintiff's rights"; (7) the "relative progress of the state and federal proceedings"; (8) the "presence or absence of concurrent jurisdiction"; (9) the availability of removal; and (10) whether "the federal action is vexatious or contrived." *Id.* A district court may also consider any "special characteristic of the case before it." *Id.*

Because Bryton does not ask this court and the state court to "concurrently assume jurisdiction over the same" property, the first factor is not relevant. *Tyrer*, 456 F.3d at 751. The second factor is neutral because both actions have been filed in and are based on events occurring in Chicago. (Dkt. 10-1 at 72, 86.) The third factor—avoiding piecemeal or broken-up proceedings—weighs strongly in favor of a stay. As the court in *DePuy* noted, "the danger of piecemeal litigation does not turn on formal identity of issues but on concerns about the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority." 953 F.3d at 478. "[A] high risk of inconsistent results and wasteful duplication" concerned the court and weighed "strongly in favor of abstention." *Id.* In this case, if the federal action moves forward, both this court and the state court would have to ascertain Kids' Work's obligations under the lease, risking inconsistent results and duplicated efforts.

Factors four and five, likewise, weigh in favor of a stay. The state court obtained jurisdiction first, a sequence Bryton chose. Illinois law governs both actions, which weighs in favor of abstaining to let the state court interpret its own law. That weight increases because of unique legal issues involved: How the state's response to the COVID-19 pandemic affects leases presents novel and important state-law questions. *DePuy Synthes Sales*, 953 F.3d at 477 (authorizing district court to consider "a special characteristic of the case before it").

The sixth factor weighs slightly against a stay because Bryton likely cannot join its breach of guaranty claim in its state court action. Illinois statute severely limits claims that can

be joined to a forcible entry and detainer action in state court to only those "matters . . . germane to the distinctive purpose of the proceeding," with a special exception for claims for rent. 735 Ill. Comp. Stat. 5/9-106. In *Twin-City Inn* v. *Hahne Enters., Inc.*, 37 Ill. 2d 133, 139 (Ill. 1967), the Illinois Supreme Court concluded that an action for breach of guaranty was not "germane" and therefore improperly joined. Nonetheless, because Cudnik's obligations to Bryton under the guaranty flow from Kids' Work's obligations under the lease, Bryton will have a full and fair opportunity to litigate the critical issues that will resolve Cudnik's liability. Whatever obligations the state court finds flowing to Bryton under the lease, those obligations will then be enforceable to the full extent provided for under the guaranty. And finally, because eviction actions are so narrowly focused, they also resolve quickly, minimizing the length of the stay. *Bem I, L.L.C.* v. *Anthropologie, Inc.*, No. 98 C 358, 1999 WL 1212643, at *5 (N.D. Ill. Dec. 14, 1999), *aff'd*, 301 F.3d 548 (7th Cir. 2002), and *aff'd*, 301 F.3d 548 (7th Cir. 2002) ("[T]he purpose of the Illinois statute is to provide summary proceedings with a quick resolution on the issue of possession only[.]"). The sixth factor therefore weighs only slightly against abstention.

Factors seven, eight, and nine also weigh in favor of abstention. The state court proceedings are slightly more advanced than the federal proceedings, as Kids' Work has answered Bryton's complaint and filed both affirmative defenses and counterclaims. (Dkt. 10-1 Exh. 1.) While this court sitting in diversity has jurisdiction over the guaranty dispute, the state court is capable of exercising jurisdiction over all of the relevant issues, including possession and liability under the lease. In a similar vein, the fact that the eviction action cannot be removed to federal court (because there is no diversity of citizenship), but must, instead, proceed in state court, weighs in favor of a stay. The tenth factor is neutral because there is no indication that the federal action is vexatious or contrived.

On balance, with several factors weighing in favor of abstention and only one weighing slightly against, the court finds that exceptional circumstances warrant a stay.

**ORDER**

Cudnik's motion to stay (dkt. 10) is granted. The parties shall file a joint status report by December 31, 2020, or within seven days after the state court rules on whether Kids' Work breached the lease, whichever comes first.

Date: November 16, 2020

_____
U.S. District Judge Joan H. Lefkow